**In re Myrtle J. PERRY.**

No. H–99–0007.

United States District Court, S.D. Texas, Houston Division.

July 2, 1999.

John J. Patterson II, Walker & Patterson, Houston, TX, for appellant.

Robert W. Soard, Houston, TX, for appellee.

### ORDER

HITTNER, District Judge.

Appellant Myrtle J. Perry ("Debtor") seeks review of an order from the United States Bankruptcy Court, Judge William Greendyke, sustaining the objection of Appellee Audubon Park Community Improvement Association ("Creditor") to Debtor's Chapter 13 Plan ("Plan"). Debtor and Creditor have briefed the issues currently before the Court. The Plan filed by Debtor provides for the cramdown [1] of Creditor's unsecured claim to zero. Creditor contends the cramdown of Creditor's claim is precluded by 11 U.S.C. § 1322(b)(2). Debtor contends section 1322(b)(2) does not apply because Creditor's claim is not a security interest or, in the alternative, because the claim is wholly unsecured. Debtor also argues 11 U.S.C. § 1322(c)(2)

---

**1.** "Cramdown" is a term of art used to refer to the bifurcation of a claim into secured and unsecured portions pursuant to 11 U.S.C. § 506. Title 11 U.S.C. § 1325(a)(5) allows a Chapter 13 debtor to reduce or eliminate the unsecured portion of the claim. When a claim is crammed down to zero, this is referred to as "strip off" of a claim.

provides an independent basis for cramdown of the claim. The Court finds Debtor's argument unpersuasive and affirms the decision of the Bankruptcy Court to sustain Creditor's objection to the Plan.

## Jurisdiction

The Court has jurisdiction over this appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).

## Facts

Debtor owns real property valued at $45,000.00 located at 15230 Flamingo Park, Humble, Texas, that is the Debtor's principal residence. Ocwen Federal Bank holds a senior mortgage on the property in the amount of $52,895.81. Creditor is a homeowners' association created by restrictive covenant recorded in Harris County, Texas. Creditor filed a Proof of Claim in the amount of $3,708.17 for unpaid maintenance assessments charged pursuant to the restrictive covenant. Debtor's Plan filed April 20, 1998, proposed to cramdown Creditor's claim to zero and Creditor objected. Creditor's objection was sustained by the Bankruptcy Court for the Southern District of Texas and confirmation of the Plan was denied.

## Discussion

■ This Court's review of findings of fact by the Bankruptcy Court is limited to a determination that the findings are clearly erroneous. *Kennard v. MBank Waco, N.A. (In re Kennard)*, 970 F.2d 1455, 1457 (5th Cir.1992). Conclusions of law are reviewed *de novo. Id.* at 1458.

The parties raise three issues: (1) whether Creditor's claim is a security interest pursuant to 11 U.S.C. § 1322(b)(2); (2) whether 11 U.S.C. § 1322(b)(2) prohibits the cramdown of Creditor's unsecured lien on the Debtor's principal residence, and (3) whether 11 U.S.C. § 1322(c)(2) provides an independent basis for cramdown of Creditor's claim. The Fifth Circuit has not ruled on the proper interpretation of either § 1322(b)(2) or § 1322(c)(2) in the context of an unsecured homestead

lien. These issues are of first impression for this Court.

■ Debtor's claim that the maintenance assessment is not a security interest pursuant to § 1322(b)(2) is without merit. Section 1322(b)(2) states:

Subject to subsections (a) and (c) of this section, the plan may ... (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders unsecured claims, or leave unaffected the rights of holders of any class of claims....

A security interest is defined by the Bankruptcy Code as a "lien created by agreement." 11 U.S.C. § 101(51). A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). To determine whether a transaction constitutes a lien created by agreement, courts should consult state law. *Consumer Lease Network v. Puckett (In re Puckett)*, 60 B.R. 223, 233 (Bankr.M.D.Tenn.1986); *In re Peacock*, 6 B.R. 922 (Bankr.N.D.Tex. 1980).

■ Texas law treats restrictive covenants that create assessment liens as contractual liens that touch and concern the land. *Inwood N. Homeowners' Assoc. v. Harris*, 736 S.W.2d 632, 635 (Tex.1987) (citing 5 R. Powell, *The Law of Real Property* § 673[2] at 60–46 (15th ed.1986)); *Boudreaux Civic Assoc. v. Cox*, 882 S.W.2d 543, 547 (Tex.App.—Houston [1st Dist.] 1994, no writ). A restrictive covenant that touches and concerns the land is binding on subsequent purchasers of the property. *Harris*, 736 S.W.2d at 635; *Billington v. Riffe*, 492 S.W.2d 343, 346 (Tex.Civ.App.— Amarillo 1973, no writ).

Debtor argues the restrictive covenant does not constitute a security interest in her residence because she was not a party to the original agreement. Appellant's Br. 7. Debtor claims she must be a party to the original agreement to create a "securi-

ty interest" in her residence. However, Texas law treats Debtor as a successor in interest to the restrictive covenant as though she had signed the original agreement because the covenant is binding on subsequent purchasers. *Harris,* 736 S.W.2d at 635; *Billington,* 492 S.W.2d at 346. Therefore, because the restrictive covenant is considered an agreement under Texas law and the Debtor is bound by that agreement, the restrictive covenant constitutes a security interest in Debtor's primary residence.

■ Debtor's second contention that Creditor's claim is not protected against bifurcation is based on an interpretation of the interplay between § 1322(b)(2) and 11 U.S.C. § 506(a).[2] The interplay of these two subsections as applied to partially secured claims was addressed by the Supreme Court in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The Court in *Nobelman* held an undersecured claim on real property that is the debtor's principal residence may not be bifurcated and subject to cramdown. *Id.,* 508 U.S. 324, 113 S.Ct. at 2108. The Court used § 1322(b)(2) to afford full protection to a partially secured claim, but did not address the effect of § 1322(b)(2) on a wholly unsecured claim. *Id.,* 508 U.S. 324, 113 S.Ct. at 2110. Since *Nobelman,* courts have disagreed about whether the prohibition on cramdown of undersecured loans applies to wholly unsecured loans. *See. e.g., American General Finance v. Dickerson,* 229 B.R. 539 (M.D.Ga.1999); *but see In re Lam,* 211 B.R. 36 (9th Cir. BAP 1997).

---

**2.** 11 U.S.C. § 506(a) states:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

Debtor argues the protection afforded to the claim in *Nobelman* should be limited to claims that are at least partially secured. Support for this position arises from the statement in *Nobelman* that "[p]etitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Nobelman,* 508 U.S. at 328, 113 S.Ct. 2106. Debtor argues this statement implies that a debtor should look first at whether a claim has any amount that would be considered secured under § 506(a). Then, if the claim is partially secured, it should be protected from bifurcation by § 1322(b)(2). If the claim is wholly unsecured, Debtor asserts the claim falls beyond the reach of § 1322(b)(2) and should be bifurcated pursuant to § 506(a).

While Debtor's position has been supported by case law, a growing number of courts have recognized the inconsistent results of this interpretation. Two district courts and a number of bankruptcy courts agree that the protection of § 1322(b)(2) applies to wholly unsecured liens.[3] *American Gen. Fin.,* 229 B.R. at 542; *In re Johnson,* 160 B.R. 800 (S.D.Ohio 1993); *In re Tanner,* 223 B.R. 379 (Bankr.M.D.Fla. 1998); *In re Lewandowski,* 219 B.R. 99 (Bankr.W.D.Pa.1998); *In re Bauler,* 215 B.R. 628 (Bankr.D.N.M.1997); *In re Shandrew,* 210 B.R. 829 (Bankr.E.D.Cal.1997); *In re Fraize,* 208 B.R. 311 (Bankr.D.N.H. 1997); *In re Barnes,* 207 B.R. 588 (Bankr. N.D.Ill.1997); *In re Barnes,* 199 B.R. 256 (Bankr.W.D.N.Y.1996); *In re Neverla,* 194 B.R. 547 (Bankr.W.D.N.Y.1996). In January of this year, a bankruptcy court in this circuit protected an unsecured homestead lien. *In re Diggs,* 228 B.R. 611 (Bankr. W.D.La.1999). These courts have recog-

---

**3.** Judge Wesley Steen for the United States Bankruptcy Court of the Southern District of Texas agreed the protection of § 1322(b)(2) extends to unsecured homestead liens. *In re Raglon,* No. 97–45650–H2–13 (Bankr. S.D.Tex. Feb. 20, 1998). Although this opinion does not have precedential value because it was not published, the Court finds it persuasive.

nized that Debtor's interpretation ignores the focus in *Nobelman* on the rights of the creditor. The Supreme Court stated although the bank's claim was partially unsecured, "that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Nobelman,* 508 U.S. 324, 113 S.Ct. at 2110. The Court noted because the Bankruptcy Code does not define "rights," courts should consult state law to determine the rights of a mortgagee. *Id.* The Court listed the rights possessed by the Texas bank as including "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default … and the right to bring an action to recover any deficiency remaining after foreclosure." *Nobelman,* 508 U.S. 324, 113 S.Ct. at 2110 (citing Tex.Prop.Code Ann. §§ 51.002–51.005 (Supp.1993)).

Debtor's argument does not comport with the Supreme Court's focus on the rights of a creditor. This Court does not agree that Creditor's rights depend upon the valuation of Debtor's property. Instead, this Court finds analysis of § 1322(b)(2) should begin with the determination that a creditor holds a lien secured by the debtor's principal residence. If so, the creditor's rights may not be modified, regardless of the valuation of the property pursuant to § 506(a). A bankruptcy treatise concurs that the focus on rights in *Nobelman* prohibits cramdown of unsecured homestead liens:

> The clear implication of [the analysis in *Nobelman*] is that even a completely *unsecured* claim holder 'secured' only by a lien on real property that is the debtor's principal residence would be protected from modification by § 1322(b)(2) notwithstanding that such an 'unsecured' lienholder could not have an allowable

secured claim under § 506(a).... In other words, the trigger for Justice Thomas's protection of rights analysis is the existence of a lien, not the presence of value to support that lien.

Keith M. Lundlin, *Chapter 13 Bankruptcy* § 4.46, at 4–56 (2nd ed.1994) (emphasis in original). *But see,* 8 *Collier on Bankruptcy* § 1322.06[1][a] at 1322–21 (L. King 15th ed. rev.1996).

Moreover, Debtor's interpretation fails to account for the disparity between allowing a strip off of an unsecured claim and the purpose of § 1322(b)(2). The goal of § 1322(b)(2) was "to provide stability in the residential home financing industry and markets." *RTC v. Washington,* 967 F.2d 173 (5th Cir.1992). This goal is reflected by the language of § 1322(b)(2), which demonstrates congressional intent to protect a homestead lien regardless of the value of the homestead. Congress used the phrase "security interest" instead of the term of art "secured claim." This choice indicates Congress did not intend to predicate protection of a creditor's rights upon the value of the underlying collateral. Instead, the claim need only be secured by a "security interest," or lien created by agreement, in the residence to garner the protection of § 1322(b)(2). *See, e.g., American Gen. Fin.,* 229 B.R. at 542 ("[T]he emphasis in the statute is on the fact that a lien exists on the property, not the value of such property").

Permitting cramdown of an unsecured homestead lien would create an unwarranted result. For example, if the property is valued at one penny greater than the claim of the senior mortgagee, then the junior mortgagee's claim would receive full protection. However, if the property is valued at one penny less than the claim of the senior mortgagee, the junior mortgagee would be left completely unprotected. *Id.* at 542–43. Considering the inexact and fluctuating nature of the valuation process, this result is needlessly harsh.[4] Fur-

---

4. In the 1997–98 supplement to *Chapter 13*

*Bankruptcy,* Lundlin concurs with this analy-

thermore, this result does not comport with the congressional intent to protect the flow of mortgage lending discussed *supra*. Accordingly, the Court determines the application of these two statutes precludes cramdown of Creditor's claim.

■ Finally, Debtor claims § 1322(c)(2) provides independent grounds for the cramdown of Creditor's claim to a zero amount. Section 1322(c)(2) states:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law ... (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Section 1325(a)(5) allows for the cramdown of claims under Chapter 13. "The very essence of a § 1325(a)(5) modification is the write down or 'cramdown' of a secured claim to the value of the collateral securing the debt." *In re Eubanks*, 219 B.R. 468, 471 (6th Cir. BAP 1998) (quoting *In re Young*, 199 B.R. 643, 647 (Bankr. E.D.Tenn.1996)).

Courts are divided regarding the effect of § 1322(c)(2) on an undersecured loan. The Fourth Circuit has held a claim may not be bifurcated under § 1322(c)(2) because the phrase "modified pursuant to section 1325(a)(5)" applies to "payment" rather than "claim." *In re Witt*, 113 F.3d 508 (1997). Thus, the debtor can modify the payment of a claim (*i.e.*, the scheduling of payments) but not the claim itself. *Id.* at 513–14. Other courts have held to the contrary. In *In re Young*, 199 B.R. 643, 645 (1996), the bankruptcy court for the Eastern District of Tennessee held a claim

may be bifurcated pursuant to § 1322(c)(2). The court found the insertion of "modified pursuant to section 1325(a)(5)" demonstrated congressional intent to allow bifurcation because the purpose of § 1325(a)(5) was to allow cramdown of claims. *See id.* at 647.

However, courts consistently apply § 1322(c)(2) exclusively to claims that mature prior to or during the term of the Chapter 13 plan. *See In re Witt*, 113 F.3d at 509 (reviewing proposed bifurcation of debt that matured in 1999 while plan extended to year 2000); *In re Eubanks*, 219 B.R. at 469 (reviewing proposed bifurcation of debt that matured in the year 2000 while plan was filed in 1996); *In re Dandridge*, 221 B.R. 741, 748 (Bankr. W.D.Tenn.1998) (referring to "last" payment as "final" payment due in year 2021); *In re Bagne*, 219 B.R. 272, 277 (Bankr. E.D.Ca.1998) (using "last" and "final" interchangeably in the context of § 1322(c)(2)); *see also In re Reeves*, 221 B.R. 756 (Bankr.C.D.Ill.1998); *In re Nepil*, 206 B.R. 72 (Bankr.N.J.1997). Section 1322(c)(2) was aimed at "second mortgages" and "short-term, high-interest rate home equity loans." *In re Eubanks*, 219 B.R. at 480. Courts have applied § 1322(c)(2) to pre-petition balloon payments and foreclosures. *In re Nepil*, 206 B.R. 72 (Bankr.N.J.1997). Thus, the "last" payment due under the original schedule in § 1322(c)(2) refers to the "final" payment and not the most recent payment.

Debtor argues the "last" payment due to Creditor was scheduled for January 1, 1998. However, this argument would require the Court to interpret the use of "last" in § 1322(c)(2) to mean "most recent" rather than "final." This interpretation runs counter to the established interpretation discussed *supra*. The

---

sis:

> The lien rights of [secured and unsecured] creditor[s] under state law—rights of much concern to Justice Thomas in *Nobelman* — are typically the same whether the mortgage holder is a dollar above or a dollar

below the allowed secured claim threshold. This reading of *Nobelman* puts an undeserved premium on valuation of residential real property—it assumes a degree of accuracy in the valuation process that is without foundation in reality.

maintenance assessment owed by Debtor in the case *sub judice* is an annual assessment with no "original payment schedule" as defined by § 1322(c)(2). The restrictive covenant reads, "[t]he covenants and restrictions of this Declaration shall run with and bind the land, for a term of twenty (20) years from the date this Declaration is recorded, after which time they shall be automatically extended for successive periods of ten (10) years." The Restrictions were filed on April 6, 1975. *Id.* Thus, payments to Creditor will fall due beyond the term of the Plan. As a result, Debtor is not entitled to modification of Creditor's claim pursuant to § 1322(c)(2) because the last payment of the maintenance assessment will not fall due prior to the final payment under the Plan. For the foregoing reasons, the Court

ORDERS the decision of the decision of the Bankruptcy Court is AFFIRMED.