In re Sieglinde M. ZIMMER, Debtor,

Sieglinde M. Zimmer, Appellant,

v.

PSB Lending Corporation, Appellee.*

No. 01–56950.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2002.

Filed Dec. 24, 2002.

* The Clerk is directed to conform the docket for this case to the caption set forth above.

Steven R. Houbeck, Cardiff, CA, and Nathan Shilberg, El Cajon, CA, for appellant.

Michael M. Wintringer, Solomon, Grindle, Silverman & Spinella, San Diego, CA, for appellee.

Before: D.W. NELSON and T.G. NELSON, Circuit Judges, and SCHWARZER,** District Judge.

** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## OPINION

D.W. NELSON, Senior Circuit Judge.

Appellant Sieglinde Zimmer, a Chapter 13 bankruptcy petitioner, filed suit against PSB Lending Corporation ("PSB Lending") to avoid a lien against her home. PSB Lending holds a second position deed of trust on Zimmer's primary residence, which is entirely unsecured because the value of the first deed of trust exceeds the value of the home. The district court dismissed Zimmer's complaint for failure to state a claim, finding that 11 U.S.C. § 1322(b)(2) prohibits avoidance of any lien on the debtor's primary residence, even where the lien is wholly unsecured. We reverse, joining with the majority of other jurisdictions in holding that a wholly unsecured lienholder is not entitled to the protections of 11 U.S.C. § 1322(b)(2).

### FACTUAL AND PROCEDURAL BACKGROUND

On or about October 8, 1997, Zimmer executed a promissory note for a $39,000 loan, secured by a deed of trust on Zimmer's residence in San Diego. Although different in form, a deed of trust is similar to a mortgage in purpose and effect. The deed of trust was assigned to PSB Lending; the outstanding loan value was $37,411.19 when Zimmer filed this case. Zimmer's residence was already encumbered by a first deed of trust securing a loan of $123,000 that was used to purchase the property.

On December 29, 1999, Zimmer filed a petition under Chapter 13, which allows a bankrupt debtor with regular income to restructure her debts and repay or discharge them as necessary. In her petition, she stated the value of her residence

as \$110,000. Because the first mortgage exceeded the value of the residence, Zimmer listed PSB Lending's claim for the repayment of its loan as unsecured.

On April 21, 2000, Zimmer filed an adversary complaint with the bankruptcy court seeking to avoid PSB Lending's lien on her home. In general, Chapter 13 allows debtors to avoid liens, but there is an exception for homestead liens that attach only to the debtor's primary residence. *See* 11 U.S.C. § 1322(b)(2). Relying on our Bankruptcy Appellate Panel's decision in *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (1997),[1] Zimmer argued that even though PSB Lending's claim was secured by her primary residence, its lien was nonetheless avoidable because the claim was wholly unsecured.

PSB Lending filed a motion to dismiss for failure to state a claim under Federal Rule of Bankruptcy Procedure 7012(b), which makes Federal Rule of Civil Procedure 12(b)(6) applicable to adversary proceedings in bankruptcy court. Concluding that it was not bound by *Lam*, the bankruptcy court held that PSB Lending's claim was protected from modification under § 1322(b)(2), and granted the motion to dismiss.

After Zimmer initially filed an appeal to the Bankruptcy Appellate Panel, PSB Lending elected to transfer the appeal to the district court. In an unpublished order, the district court affirmed the bankruptcy court's dismissal of the complaint, agreeing that liens against the debtor's primary residence are protected from modification under § 1322(b)(2) even if the underlying claim is wholly unsecured. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction to hear the appeal from the bankruptcy judge under 28 U.S.C. § 158(a). We have jurisdiction to hear the appeal from the district court under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.

■ Where a bankruptcy court has dismissed a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and the dismissal has been affirmed by the district court, appellate review is de novo. *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir.2001). A motion to dismiss for failure to state a claim should only be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hemmeter*, 242 F.3d at 1189.

## DISCUSSION

The district court erred in holding that a wholly unsecured lien on a primary residence may not be avoided in a Chapter 13 proceeding. The plain language of 11 U.S.C. § 1322(b)(2) provides that antimodification protection is only available to holders of secured claims. PSB Lending is not the holder of a secured claim under the definitions provided in the Bankruptcy Code, and therefore its rights may be modified under § 1322(b)(2).

*The Bankruptcy Code*

■ This case turns on the interpretation and application of two provisions of the Bankruptcy Code, 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). Section 506(a) divides creditors' claims into "secured

---

**1.** *In re Lam* was appealed to this Court, but the appeal was dismissed on other grounds without consideration of the merits of the Bankruptcy Appellate Panel's holding. *See* 192 F.3d 1309, 1311 (9th Cir.1999).

claims" and "unsecured claims." Although the conventional interpretation of "secured" might include any claim in which the creditor has a security interest in the debtor's property, § 506(a) makes clear that the status of a claim depends on the valuation of the property:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a). To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

█ In general, Chapter 13 allows the modification of the rights of creditors, including the avoidance of liens against the debtor's property, but protects homestead liens from modification:

> [A Chapter 13 plan may] modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2). Assuming that PSB Lending holds "a claim secured only by a security interest in real property that is the debtor's principal residence," it might qualify for protection against modification.[2] If so, its lien would survive bankruptcy and could not be avoided by Zimmer.

Although it seems paradoxical on its face, PSB Lending's claim is arguably an "unsecured claim" that is also "a claim secured only by a security interest in real property that is the debtor's principal residence." Whether the antimodification clause of § 1322(b)(2) applies to the holder of such a claim is a question of first impression in this Circuit. Numerous other jurisdictions, however, have addressed this question in dozens of published opinions. The position adopted by a majority of courts is that the antimodification clause does not apply to wholly unsecured homestead liens, but a substantial minority of courts has taken the contrary position. *See, e.g., Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 288–89 n. 15 & n. 16 (5th Cir.2000) (collecting cases). Both camps believe their preferred result to be compelled by the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

*The Supreme Court's decision in Nobelman*

In *Nobelman*, the Supreme Court considered the question of whether a partially-secured claim secured by a homestead lien could be bifurcated into its secured and unsecured components, and "stripped

---

**2.** Zimmer argues that PSB Lending's claim is not, in fact, secured only by real property, but also includes personal property as security. In light of our conclusion that PSB Lending

does not qualify as a holder of a secured claim, we need not reach the issue of whether its security interest attaches only to real property.

down" to the value of the secured claim. *See id.* at 326–27, 113 S.Ct. 2106. The debtors argued that, under § 506(a), the holder of an undersecured mortgage—for which the value of the claim exceeds the value of the property—only holds a "secured claim" to the extent of the value of the property, and holds an "unsecured claim" for the excess value of the mortgage. *Id.* at 328, 113 S.Ct. 2106. Because § 1322(b)(2) only protects the rights of "holders of secured claims," they maintained that only the secured portion of the mortgage was entitled to protection and, therefore, that the value of the mortgage could be effectively reduced to its secured value. *Id.*

The Supreme Court rejected this approach of bifurcation and stripping down, primarily because the debtors' argument failed to consider the fact that § 1322(b)(2) "focuses on the modification of the '*rights of holders*,'" *id.*, not the status of claims. Although the Court found that it was proper to look to § 506(a) "for a judicial valuation of the collateral to determine the status of the [creditor's] claim," *id.*, because the creditor's claim was partially secured, the creditor was "still the 'holder' of a 'secured claim.'" *Id.* at 329, 113 S.Ct. 2106. Therefore, it was entitled to the protections of the antimodification clause.

The Court's interpretation of § 1322(b)(2) is worth considering in detail. The Fifth Circuit, in the decision reviewed by *Nobelman,* had concluded that "section 1322(b)(2) appears to conflict with section 506(a)," and resolved the conflict in favor of § 1322(b)(2). *Nobleman v. Am. Sav. Bank (In re Nobleman),* 968 F.2d 483, 488 (5th Cir.1992). The Supreme Court took a different approach, giving effect to both statutes in its interpretation of "claim" in the antimodification clause. The debtors argued that "claim secured only by a security interest in real property" should work to modify "secured claims" in the antecedent clause, such that the antimodification clause would only apply to a *secured claim* secured only by a security interest in the debtor's home. *Nobelman,* 508 U.S. at 330, 113 S.Ct. 2106. The Supreme Court rejected this argument, finding that "claim secured only by" is *not* equivalent to the term of art "secured claim." *Id.* at 331, 113 S.Ct. 2106. Instead, noting that " § 506(a) itself uses the phrase 'claim … secured by a lien' to encompass *both portions* of an undersecured claim," the Court found that the antimodification clause similarly applied to both the unsecured and secured components of the mortgage claim. *Id.* (emphasis added).

Finally, the Supreme Court indicated that its interpretation was reasonable because it would be impossible to administer a bifurcated claim. There was no dispute that the secured portion of the mortgage could not be modified, and under such circumstances there was no direction in the Bankruptcy Code as to how the terms of the mortgage could be readjusted by reducing its value to the secured portion without modifying the "rights" of the mortgage holder. *Id.* at 331–332, 113 S.Ct. 2106. Justice Stevens also noted, in a brief concurrence, that the Court's result was in accordance with "legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." *Id.* at 332, 113 S.Ct. 2106 (Stevens, J., concurring) (citing *Grubbs v. Houston First Am. Sav. Ass'n,* 730 F.2d 236, 245–46 (1st Cir.1984)).

*The majority position*

The majority position, that § 1322(b)(2) does not prohibit avoidance of liens associated with wholly unsecured claims, has been adopted by all five Courts of Appeals to consider the issue, as well as two Bankruptcy Appellate Panels. *Lane v. W. In-*

*terstate Bancorp (In re Lane)*, 280 F.3d 663, 667–69 (6th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir.2001); *Tanner v. First-Plus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1359–60 (11th Cir.2000); *Bartee, supra*, 212 F.3d at 288, 295; *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 611 (3d Cir.2000); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (B.A.P. 1st Cir.2000); *Lam, supra*, 211 B.R. at 40–41.

One of the earliest and most influential of these cases is our BAP's opinion in *Lam*. The panel gave three primary reasons for its conclusion that a wholly unsecured lien may be avoided: 1) although the *Nobelman* Court focused on the rights of the creditor, the "rights" of a wholly unsecured creditor are "empty rights"; 2) in order to qualify for the antimodification protections, the creditor must first be a "holder of a secured claim"; and 3) extending antimodification protection might have the unwanted effects of inducing more filings under Chapter 11 and inducing creditors to obtain mortgages on overburdened property in order to avoid modification of their rights. 211 B.R. at 40–41.

Other courts have focused primarily on the second reason cited in *Lam*, that a creditor that is not the holder of a secured claim simply cannot qualify for antimodification protection. The Sixth Circuit in *Lane* outlines this argument in near-syllogistic fashion:

- Section 1322(b)(2) prohibits modification of the rights of a holder of a secured claim if the security consists of a lien on the debtor's principal residence;

- Section 1322(b)(2) permits modification of the rights of an unsecured claimholder;

- Whether a lien claimant is the holder of a "secured claim" or an "unsecured claim" depends, thanks to § 506(a), on whether the claimant's security interest has any actual "value" . . .

- If a claimant's lien on the debtor's homestead has no value at all . . . the claimant holds an "unsecured claim" and the claimant's contractual rights are subject to modification by the plan.

280 F.3d at 669. This argument is appealing in its simplicity and reliance on the plain text of the statute. Without a secured claim, a creditor's rights may be modified. Nonetheless, the tenacity of the minority position compels us to consider whether its argument should prevail.

*The minority position*

The minority position holds that § 1322(b)(2) prohibits the avoidance of any homestead lien, regardless of whether the claim is secured or unsecured. Perhaps the lead case in the minority camp is *American General Finance, Inc. v. Dickerson*, 229 B.R. 539 (M.D.Ga.1999) ("*Dickerson I* "). Although no appeals court has adopted the minority position, one panel of the Eleventh Circuit stated that it would do so were it not bound by the decision of a previous panel. *See Am. Gen. Fin., Inc. v. Dickerson (In re Dickerson)*, 222 F.3d 924, 926 (11th Cir.2000) (overruling the district court in *Dickerson I* but noting that, were it not bound by *Tanner, supra*, it would follow the district court's reasoning).[3]

---

3. We also note with concern that several bankruptcy courts in this circuit, including the bankruptcy court in this case, have criticized and refused to follow the BAP's holding of *Lam*, adhering instead to the minority position. *E.g., In re Enriquez*, 244 B.R. 156, 161–62 (Bankr.S.D.Cal.2000); *Ortiz v. Household Fin. Corp. (In re Ortiz)*, 241 B.R. 460, 461

The court in *Dickerson I* found that "the emphasis in the statute [§ 1322] is on the fact that a lien exists on the property, not the value of such property," 229 B.R. at 542, and faults the majority for failing to recognize "that the existence of a lien carries any rights if the lien is unsecured." *Id.* at 543. The court points out that the majority position leads to the result that one penny of secured value will protect the creditor's rights, *id.* at 542–43, and argues that such a result "place[s] too much emphasis on the valuation process." *Id.* at 543.

The opinion in *Dickerson I* attempts to defeat the majority position's plain-language interpretation of § 1322(b)(2) by pointing to the Supreme Court's interpretation of "claims" in the antimodification clause. *Dickerson I,* 229 B.R. at 542. As noted above, the Court held that the language "claim secured only by a security interest in real property" encompasses both the secured and unsecured components of an undersecured claim, and so the *Dickerson I* court argues that it also encompasses a wholly unsecured claim. *Id.*

*Section 1322(b)(2) allows modification of unsecured claims*

■■■ We find ourselves in partial agreement with *Dickerson I,* but in greater agreement with the majority position. As *Dickerson I* notes, the language "claim secured only by a security interest in real property" *does* encompass all such claims, secured or unsecured. We agree that, in this case, PSB Lending may well be the holder of a "claim secured only by a security interest in real property that is the debtor's home." Nonetheless, because PSB Lending is still not a "holder of a secured claim," it cannot qualify for anti-modification protection.

The analysis in *Dickerson I* ignores the order in which the Supreme Court proceeded in *Nobelman.* First, the Court determined that it was proper to engage in the § 506(a) valuation process. 508 U.S. at 328, 113 S.Ct. 2106. Second, the Court noted that, "even if we accept [the debtors'] valuation," the creditor was still the holder of a secured claim. *Id.* at 329, 113 S.Ct. 2106. Finally, and only after determining that the creditor was the holder of a secured claim and thus eligible for anti-modification protection, the Court proceeded to the question of exactly what was entitled to such protection. *Id.* at 329–30, 113 S.Ct. 2106. The Court found that the rights of such a creditor were protected and, therefore, in order to protect such rights, interpreted the antimodification clause to encompass the entire claim of such a creditor so long as it was secured by a homestead lien. *Id.* at 330–31, 113 S.Ct. 2106.

The minority position attempts to jump forward to the last step in this analysis—determining what is entitled to protection from modification—without considering whether the creditor even qualifies for such protection in the first place. While it is clear that the term "claim secured only by" in the antimodification clause is not limited to "secured claims," it is equally clear that "holders of secured claims" does refer to the term of art as defined by § 506(a). The *Nobelman* Court recognized this when it pointed out that Congress used a different phrase in the antimodification clause "rather than *repeating* the term of art 'secured claim.'" *Id.* at

(E.D.Cal.1999). Although the binding nature of Bankruptcy Appellate Panel decisions—an open question in this circuit—is not squarely before us in this case, we join Judge O'Scannlain's call for the Judicial Council to consider an order clarifying whether the bankruptcy courts must follow the BAP. *See Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1989) (O'Scannlain, J., specially concurring).

 

331, 113 S.Ct. 2106 (emphasis added). Looking to § 506(a) to determine which creditors are the "holders of secured claims," a creditor in PSB Lending's position plainly does not qualify. By taking the contrary position, the minority "fail[s] to appreciate the *Nobelman* Court's conclusion that [the] 'rights' [of the creditor] flowed first from a lien which had *some* collateral value." *Mann,* 249 B.R. at 837.[4]

While *Dickerson I* is correct in noting that the majority position places great emphasis on the valuation process, this emphasis is compelled by *Nobelman* and the statutory scheme:

> The courts in the minority too easily dismiss the role of a § 506(a) valuation. The *Nobelman* Court stated that, "By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home." 508 U.S. at 328, 113 S.Ct. at 2110. In the very next sentence, the Supreme Court found that it was correct for a Chapter 13 debtor, in the context of a homestead lien, to seek a § 506(a) valuation. *Id.* Further, the Court stated that in this context, the valuation should be used to "determine the status of the [creditor's] secured claim." *Id.* These statements refute the analysis of courts that find a valuation to be irrelevant. In a § 1322(b)(2) plan, a valuation cannot be both irrelevant and necessary to determine the status of a homestead lien.... Therefore, the Supreme Court's acceptance of a § 506(a) valuation in the context of § 1322(b)(2) must control.

*Johnson v. Asset Mgmt. Group, LLC,* 226 B.R. 364, 367–68 (D.Md.1998) (alteration in original). In order to give effect to the definitions of secured and unsecured claims under § 506(a), we must conclude that the rights of a creditor holding only an unsecured claim may be modified under § 1322(b)(2).

Finally, it is worth noting that the concerns expressed by the Supreme Court in *Nobelman* are largely absent here. Because PSB Lending's lien may be avoided entirely, and its lien rights abrogated as to its entire unsecured claim, we need not consider the dilemma of how to modify an unsecured component without affecting the creditor's rights with respect to the secured component. Furthermore, although Justice Stevens recognized a congressional policy in favor of promoting home lending, we join other courts in interpreting this as applying to first or purchase-money mortgages. *See Lam,* 211 B.R. at 41 (citing *In re Plouffe,* 157 B.R. 198, 200 (Bankr. D.Conn.1993)). We have not found, nor have the parties pointed to, any evidence of a congressional policy in favor of promoting subsequent mortgages or deeds of trust that are entirely unsecured due to a lack of equity in the property.

## CONCLUSION

We conclude that the district court erred in holding that a wholly unsecured lien is protected by the antimodification clause of § 1322(b)(2). We reverse the decision of the district court and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

**4.** Because we conclude that the rights of a wholly unsecured creditor need not be protected under § 1322(b)(2), we need not consider the *Lam* panel's determination that such rights are "empty rights." *See* 211 B.R. at 40.