**In re Herman DIGGS, Sr., and Rosalind Colar Diggs, Debtors**

**Bankruptcy No. 98–51475.**

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Jan. 13, 1999.

Gregory deKeyzer, New Iberia, LA, for Herman & Rosalind Diggs.

C.J. Rusty Ashley, II, Opelousas, LA, for Household Finance Corporation.

Hamilton J. Chauvin, Jr., Lafayette, LA, for Keith A. Rodriguez, Chapter 13 Trustee.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

Some cases scream out for help from up above, i.e., either the Fifth Circuit or the Supreme Court. This is one of those cases.

### FACTS

On July 30, 1998, Herman Diggs, Sr., and Rosalind Colar Diggs ("Debtors") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, and on that day an order for relief was duly entered. The Debtors' chapter 13 plan was confirmed on November 10, 1998; an amended confirmation order was entered December 28, 1998.

The Debtors own real property situated in Iberia Parish, Louisiana. A 1982 Skylark mobile home sits on this land. Prior to bankruptcy, the Debtors had burdened this property with a first mortgage held by First National Bank of Jeanerette ("FNB") and a second mortgage held by Household Finance Corporation ("HFC"). The Debtors' schedules value the land at $5,000.00 and the mobile home at $5,000.00.

HFC timely filed a proof of claim in the case, asserting a secured claim in the amount of $13,198.14. From a review of such claim, it appears that HFC holds a valid and perfected security interest in the Debtors' real property, represented by a note and mortgage executed and recorded in December 1997.

The Debtors' confirmed plan, as amended, proposes payments to FNB as a secured creditor, but treats HFC as an unsecured creditor:

> The mortgage held [by] First National Bank of Jeanerette exceeds the value of the collateral and the amount due Household Finance Corporation will be treated

as unsecured. The mortgage in favor of Household Financial Services [sic] will be extinguished and cancelled upon completion of the Chapter 13 plan.[1]

Relevant Fifth Circuit case law, however, offers HFC's claim certain protections. By virtue of the decisions in In re Simmons, 765 F.2d 547 (5th Cir.1985), and In re Howard, 972 F.2d 639 (5th Cir.1992), the rights of a secured creditor who has filed a proof of claim and who did not contest confirmation are not subject to a plea of res judicata. In other words, the secured creditor may rely on his claim notwithstanding contrary and conflicting provisions of a chapter 13 plan.

Facing this factual scenario, the Debtors filed an objection to the HFC claim. HFC has responded, and the court now must attempt to divine what the appropriate result is, without having any guidance from above.

### SECTION 1322(b)(2) and NOBELMAN

Leonard and Harriet Nobleman filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code in 1990. They had previously mortgaged their principal residence to American Savings Bank ("ASBank"). At the time of the bankruptcy filing, the value of their residence was $23,500.00, while the balance due on the mortgage was $71,335.00. Relying on the birfurcation provision of section 506(a)[2], the Noblemans' chapter 13 plan sought to treat ASBank as the holder of an allowed secured claim in the amount of $23,500.00 and the holder an allowed unsecured claim for $47,835.00. Since the plan provided for no distribution to unsecured claims, ASBank's unsecured claim was worthless.

Asserting that the plan violated the provisions of section 1322(b)(2)[3], both ASBank

---

1. Modified Chapter 13 Plan, para. 3. *Plan Payments.*, (I) *Miscellaneous Provisions*, filed December 14, 1998.

2. Section 506(a) provides in relevant part:

   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of

such creditor's interest... is less than the amount of such allowed claim....

3. Section 1322(b)(2) provides in relevant part:

   (b) Subject to subsections (a) and (c) of this section, the plan may –

   \* \* \* \* \* \*

   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, ...;

and the chapter 13 trustee objected to confirmation of the plan. Confirmation was denied by the Bankruptcy Court, and that decision was affirmed on appeal, both by the District Court [4] and the Fifth Circuit [5]. Recognizing a conflict among the circuits [6], the United States Supreme Court granted certiorari [7].

Focusing on the use of the word "rights" in the phrase "modify the rights of holders of secured claims", the Supreme Court affirmed, holding that

> § 1322(b)(2) cannot operate in combination with § 506(a) in the manner theorized by petitioners.

> In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

The issue presented in the instant case is whether section 1322(b)(2) and *Nobelman* offer any protection to the holder of a second mortgage on a chapter 13 debtor's principal residence where the full value of the property is exceeded by the amount of the first mortgage? Stated differently, does the protection afforded by section 1322(b)(2) inure to the benefit of the holder of a junior mortgage under circumstances where section 506(a) would deem such mortgagee to be wholly unsecured?

### DISCUSSION

#### (1) *Majority View.*

Judge Lundin suggests that the majority of the cases which have considered this issue have concluded that neither section 1322(b) nor *Noblelman* prohibit modification of a totally unsecured junior lien on a chapter 13 debtor's principal residence. Keith M. Lun-

din, *Chapter 13 Bankruptcy*, 2nd ed., 1997–98 Cumulative Supplement, § 4.46, p. 328.

This line of cases utilizes section 506(a) to conclude that section 1322(b)(2) is inapplicable. The reasoning goes like this: (a) by definition, a creditor holding a claim secured by a lien on the debtor's property has a secured claim to the extent of the value of the property; (b) however, since the entire value of the property is subsumed by the senior mortgage, the holder of the junior mortgage is not the holder of an allowed claim secured by a lien with value; and (c) ergo, section 1322(b)(2) does not apply as the claim is not secured only by a security interest in the debtor's principal residence.

Illustrative of the cases which reach this conclusion are *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997), *In re Woodhouse*, 172 B.R. 1 (Bkrtcy.D.R.I.1994), and *In re Moncrief*, 163 B.R. 492 (Bkrtcy.E.D.Ky.1993). Collier also concludes that the *Nobelman* opinion itself "strongly suggests, however, that if a lien is completely undersecured, there would be a different result." 5 Collier on Bankruptcy, ¶ 1322.06, at p. 1322–18 (15th ed.1996).

#### (2) *Minority View.*

While still in the apparent numerical minority, a growing line of cases conclude that section 1322(b)(2) protection against nonmodification runs in favor of mortgage holders even if, utilizing section 506(a), such claims are wholly unsecured. *See, e.g., In re Bauler*, 215 B.R. 628 (Bkrtcy.D.N.M.1997), and cases cited therein. These cases take the position that the majority have ignored *Nobelman's* emphasis on "rights" and have mistakenly focused on valuation and section 506(a). A detailed analysis of the minority position is set forth in the cases of *In re Howard M. Lewandowski*, 219 B.R. 99, (Bkrtcy.W.D.Pa.1998), *In re Jones*, 201 B.R. 371 (Bankr.D.N.J.1996), *In re Neverla*, 194 B.R. 547 (Bankr.W.D.N.Y.1996). Judge Lun-

---

4. *In re Nobelman*, 129 B.R. 98 (N.D.Tex.1991)

5. *In re Nobeleman*, 968 F.2d 483 (5th Cir.1992).

6. Four Circuits had held that section 1322(b)(2) allows bifurcation of under-secured homestead mortgages. *In re Bellamy*, 962 F.2d 176 (2nd Cir.1992); *In re Hart*, 923 F.2d 1410 (10th Cir.

1991); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1990); and *In re Hougland*, 886 F.2d 1182 (9th Cir.1989).

7. *In re Nobelman*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

din appears to suggest that the minority position more accurately reflects the Supreme Court's reasoning in *Nobelman*. *Ibid.*

### (3) *Fifth Circuit View.*

The Fifth Circuit has yet to be presented with this issue. In fact, the Fifth Circuit has had only one occasion to discuss *Nobleman* to any extent relevant to this issue. One question presented in *Matter of Mendoza*, 111 F.3d 1264 (5th Cir.1997), was whether including post-petition arrearages on the residential mortgage in post-confirmation amendment violates section 1322(b)(2) and *Nobelman*. In this regard, the court said:

> However, *Nobelman* precludes modification of the mortgagee's "rights" which are "reflected in the relevant mortgage instrument[ ]...." *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110 (emphasis added). These rights may include, for example: (1) the right to repayment of the principal in monthly installments over a fixed term at a specified interest rate, (2) the right to retain the lien until the debt is paid off, (3) the right to accelerate the loan upon default and to proceed to foreclosure and recover any resulting deficiency. *Id.* We find Temple's reliance on *Nobelman* misplaced under the facts of this case. In the case *sub judice*, Mendoza is not attempting to modify the "rights" of the mortgagee (Temple), but instead, solely seeks to modify her Chapter 13 Plan to include the postpetition mortgage arrearage while observing the "bargained for" terms of her mortgage. There is a distinction between modifying the rights of a mortgagee where the debtor proposes to pay his mortgage at an interest rate lower than that provided for in the mortgage, and modifying a plan of reorganization to include postpetition mortgage payments which are in arrears. Accordingly, Temple's rights as a mortgagee and its security interest are not considered "modified" under our reading of *Nobelman*.

111 F.3d at 1267–68.

### (4) *Our View.*

With all due respect to the those who ascribe to the majority position on this issue, this court believes that those cases improperly focus on *valuation* rather than *rights*—this focus, in this court's opinion, flies in the face of *Nobelman*.

As observed by the court in *In re Barnes*, 207 B.R. 588, 592 (Bkrtcy.N.D.Ill.1997), those cases which allow a "stripoff" (rather than a "stripdown") of wholly undersecured home mortgages "recreated the loophole *Nobelman* attempted to close." To decide matters as presented in the instant case by beginning the analysis with valuation is error. *Nobelman* condemns this analysis. "For a debtor in Chapter 13, § 1322(b)(2) trumps § 506(a)." 207 B.R. at 593.

The important question which must be asked is whether holders of home mortgages that are admittedly wholly undersecured have rights under state law. The answer is "yes", as the examples set forth in the above-quoted language from *Mendoza* indicates. Additional rights are present. For example, the junior mortgagee enjoys the increase created by inflation. The house with zero equity today may have 5, 10 or 15% equity in the next year or so. As inflation increases the value of the property, the junior mortgagee may well go from wholly unsecured to partially secured. And, in addition, each month the homeowner pays down the principal balance of the senior mortgage the relative position of the junior mortgagee is enhanced. These are valuable rights which the mortgagee has which would be eliminated under the majority position. Section 1322(b)(2) prohibits these rights from being modified, and nothing in the *Nobelman* analysis lends probative weight to any other conclusion.

### CONCLUSION

For the foregoing reasons, the court concludes that section 1322(b)(2), as interpreted by the Supreme Court in *Nobelman*, prohibits the Debtors from attempting to modify the rights of HFC, which is the holder of a claim secured only by an interest in real property that is the Debtor's principal residence. Accordingly, the Debtor's Objection to Proof of Claim is hereby **DENIED.**

A separate order in conformity with the foregoing reasons is this day being entered into the record of this proceedings.