**In re Anthony N. PERUGINI and Debra A. Perugini, Debtors.**

**Bankruptcy No. 99–30280.**

United States Bankruptcy Court, D. Connecticut.

June 9, 1999.

Frederick A. Dlugokecki, Naugatuck, CT, for debtor.

Molly T. Whiton, Hartford, CT, trustee.

## MEMORANDUM OF DECISION ON STATUS OF CLAIMS AND CONFIRMATION OF PLAN

ALBERT S. DABROWSKI, Bankruptcy Judge.

The matters presently before the Court focus the issue of whether, in the wake of the United States Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), a Chapter 13 debtor's plan may modify the rights of a creditor who holds a record security interest upon the principal residence of the debtor where the value of that residence is insufficient to provide any value to the creditor's security interest. For the reasons stated below, this Court holds that a debtor may modify the rights of such a creditor.

## I. BACKGROUND

This case is before the Court to consider confirmation of the Debtors' Chapter 13 Plan and to dispose of their related Motion to Determine Status of Claims (hereafter, the "Section 506 Motion"). The Section 506 Motion asserts that the "Lien" of BankBoston, N.A. (hereafter, the "Bank")—a creditor holding a junior mortgage upon the Debtors' personal residence (hereafter, the "Residence")—"exceed[s] in whole the value of the [Residence]", and requests that the Bank's "claims ... be deemed unsecured...." The Debtors' Plan then proposes no monetary distribution on

the putative unsecured claim of the Bank.[1] The Bank objected to confirmation of the Debtors' Plan and to the determination of unsecured status sought by the Section 506 Motion. Thereafter, however, the Bank filed a "Stipulation of BankBoston, N.A. Concerning Value of Collateral" which, for the purpose of the matters *sub judice* only, stipulates that "the value of the Debtors' [Residence] is such that the Bank's claim secured by a mortgage on such property is, and at all relevant times during the pendency of this case has been, entirely 'undersecured.' "

## II. DISCUSSION

The term "undersecured" does not appear in the Bankruptcy Code. However, according to Bankruptcy Code Section 506(a), "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is an *unsecured* claim to the extent that the value of such creditor's interest [in the estate's interest in such property] ... is less than the amount of such allowed claim." (emphasis supplied). This description makes plain that in Bankruptcy Code parlance, a wholly "undersecured" claim is in fact an "unsecured" claim. That is precisely the type of claim the Bank concedes it holds.

Bankruptcy Code Section 1322(b) permits a Chapter 13 plan, *inter alia*, to—

(2) *modify the rights* of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or *of holders of unsecured claims*, or leave unaffected the rights of holders of any class of claims....

11 U.S.C. § 1322(b)(2) (emphasis supplied). It is undisputed that the Plan attempts to modify the rights of the Bank. The Bank asserts that such modification contravenes

---

1. The Plan seems to propose to pay 100% on general unsecured claims, but then states that there are "[n]o Unsecured Claims". Nonetheless, there are unsecured proofs of claim of record in this Court. This Court has not been asked, via claim objection or otherwise, to rule on the allowance of any of those claims—

including the Bank's claim. On the present record, all the Court has been asked to do, and all it can do, is determine the secured/unsecured status of the Bank's claim. Any disallowance of claims can be ordered only upon proper claim objection.

Section 1322(b)(2)'s non-modification proviso—which preserves a *secured* claim from modification where the underlying security interest only encumbers the debtor's principal residence—and offends *Nobelman's* construction thereof.

█ This matter is neither controlled by *Nobelman,* nor materially affected by it. Rather, the issue before the Court can be resolved strictly through recourse to the plain language of Sections 506(a) and 1322(b)(2). Section 1322(b)(2) describes the permissible plan treatment of two distinct categories of claims—"secured" and "unsecured". Only if a claim is "secured" in the first instance, need a court move on to consider if that claim is "secured only by a security interest in real property that is the debtor's principal residence." However, if a claim is "unsecured" in the first instance, no further inquiry need be made. An "unsecured" claim is a modifiable claim, regardless of the nature of the purported collateral.[2] As noted above, the Bank's claim is "unsecured", and therefore, is modifiable as proposed in the Debtors' Chapter 13 Plan.

### III. CONCLUSION

For the reasons stated herein, the Debtors' Motion to Determine Status of Claims shall be GRANTED by separate order. Further, for the reasons stated herein, the Debtors' Chapter 13 Plan may modify the claim of BankBoston, N.A.; yet, for reasons not raised by the matters *sub judice,*[3] that Plan is not presently confirmable.

---

2. This ruling is consistent with the decisions of two of the other Judges of the Bankruptcy Court in this District. *See Matter of Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993) (Krechevsky, J.); *In re Hornes,* 160 B.R. 709 (Bankr. D.Conn.1993) (Shiff, J.)

3. There are proofs of claim on file in this case which at the present time constitute deemed allowed unsecured claims. *See* 11 U.S.C. 502(a). The Chapter 13 Plan purports to provide a 100% dividend on unsecured claims, but the Debtors' Plan payments are insufficient to enable such a dividend on the deemed allowed claims.