**In re Brenda K. PERKINS, Debtor.**

**Bankruptcy No. 98–36478.**

United States Bankruptcy Court,
S.D. Ohio,·
Western Division.

Aug. 3, 1999.

Michael J. Ellerbrock, Dayton, OH, for Debtor.

Robert D. Ross, Ross & Ross, Dayton, OH, for Creditor.

Michael S. Arnovitz, Dennis Reimer Co., L.P.A., Twinsburg, OH, United States Trustee.

### DECISION AND ORDER DENYING THE DEBTOR'S MOTION TO AVOID LIEN

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K).

This matter is before the court upon the Debtor's Motion for Order Lien Avoidance (sic.) [Doc. # 23–1] and Homecoming Financial Network's Response in Opposition to Motion for Order Lien Avoidance (sic.) [Doc. # 24–1]. A hearing on the Debtor's motion was held on June 1, 1999. The following decision and order constitutes

the court's findings in accordance with Federal Rule of Bankruptcy Procedure 7052(a).

## FACTUAL FINDINGS

The Debtor, Brenda K. Perkins ("Debtor"), has requested that the court avoid the lien of the Creditor, Homecomings Financial Network ("HFN"), because the Debtor asserts that the lien is entirely unsecured. HFN is the holder of a second mortgage in the amount of $19,458.22 on the principal residence of the Debtor. The first mortgage holder has a lien of $45,-387.95 on the residence. The residence has been valued by the Debtor in her Chapter 13 plan at $45,000.00 and by the Chapter 13 Trustee's appraiser at $40,-000.00.

Because the value of the home under either valuation is less than the amount due on the first mortgage, the Debtor requests that the court avoid HFN's lien and declare the claim to be unsecured. The Debtor asserts that 11 U.S.C. § 1322(b)(2) allows the court to modify the rights of a mortgage holder with no equity in the collateral to support its lien. In opposition, HFN argues that, whether or not equity in the house exists, its claim may not be avoided under § 1322(b)(2) because of the claim's nature as a security interest in real property that is the debtor's principal residence. After careful consideration of the materials filed by the parties, the arguments presented at the hearing and an independent examination of the legal principles in question, the court is now prepared to issue its decision in this matter.

## CONCLUSIONS OF LAW

■ The Debtor attempts to "strip off" HFN's second mortgage under

§ 506(a) of the Bankruptcy Code. This section provides a valuation analysis which limits the secured component of a creditor's claim by relating it to the value of the underlying collateral. 11 U.S.C. § 506(a); *Barnes v. American Gen. Fin.* (*In re Barnes*), 207 B.R. 588, 590 (Bankr.N.D.Ill. 1997). Generally, if a secured claim exceeds the value of the collateral to which it may attach, the surplus may be bifurcated and treated as unsecured in a process referred to as "strip down" of the claim. *Barnes,* 207 B.R. at 590. If the secured creditor has no value in the collateral to support its lien, because the collateral is worthless or a senior claim exists, then the lien is "stripped off" leaving that creditor's claim wholly unsecured. *Id.*

■ No party disputes that HFN's second mortgage would be wholly unsecured after a § 506(a) valuation. However, HFN argues that it is protected from a strip off of its mortgage by Bankruptcy Code § 1322(b)(2). This section prohibits a Chapter 13 debtor from modifying the rights of a claim holder if the claim is "secured only by a security interest in real property that is the debtor's principal residence ...." 11 U.S.C. § 1322(b)(2). In *Nobelman,* the Supreme Court held that if a claim meets the requirements of § 1322(b)(2), a debtor may not modify the claim even if it is only partially secured. *See Nobelman v. American Sav. Bank,* 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Thus, § 1322(b)(2) protects a partially secured mortgage holder, whose only collateral is the debtor's principal residence, from a § 506(a) strip down of its claim into secured and unsecured components.[1] *Id.*

Since *Nobelman,* however, courts have come to differing conclusions regarding whether the protection afforded by

---

1. In 1994, Congress amended 11 U.S.C. § 1322 to provide that a mortgage may be modified and stripped down into secured and unsecured divisions if the last payment on the mortgage on the original payment schedule is "due before the date on which the final payment under the plan is due." 11 U.S.C. § 1322(c)(2); *see also First Union Mortgage*

*Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 470 (6th Cir. BAP 1998). This amendment provides an exception to the anti-modification protection of § 1322(b)(2) for such short term mortgages. *See Eubanks,* 219 B.R. at 470. However, neither party has argued that HFN's claim is such a short term mortgage and it appears, from the record, that the

§ 1322(b)(2) extends beyond partially secured creditors to those creditors who would hold wholly unsecured claims under a 11 U.S.C. § 506(a) valuation. *See Lewandowski v. United States Dep't of Housing and Urban Dev.* (*In re Lewandowski*), 219 B.R. 99, 103–104 (Bankr. W.D.Pa.1998) (analyzing conflicting holdings of the bankruptcy courts). One view is that § 1322(b)(2) only protects mortgages that are at least partially secured by some value in the collateral to which the security interest may attach. *Id.* at 103; *see also, In re Phillips,* 224 B.R. 871 (Bankr.W.D.Mich.1998). Thus, if the mortgage holder is wholly unsecured after a § 506(a) valuation, § 1322(b)(2) is inapplicable and the lien can be stripped off. *See, e.g., Associates Fin. Services Corp. v. Purdue* (*In re Purdue* ), 187 B.R. 188, 190 (S.D.Ohio 1995) (J. Beckwith); *Lam v. Investors Thrift* (*In re Lam* ), 211 B.R. 36, 41 (9th Cir. BAP 1997); *Phillips,* 224 B.R. at 873.

In contrast, another view focuses on the rights of the creditor bargained for in its mortgage agreement and enforceable under state law to determine whether § 1322(b)(2) applies. *In re Diggs,* 228 B.R. 611, 613–614 (Bankr.W.D.La.1999); *Barnes,* 207 B.R. at 592. If a security interest in the debtor's principal residence has been properly perfected, these cases hold that § 1322(b)(2) protects the creditor's claim from modification even if the creditor would be wholly unsecured after a § 506(a) valuation. *See, e.g., Diggs,* 228 B.R. at 614; *Barnes,* 207 B.R. at 593–594; *In re Neverla,* 194 B.R. 547, 552–553 (Bankr.W.D.N.Y.1996).

After careful consideration, the court believes that the better view, following the guidance given by the Supreme Court in *Nobelman,* focuses on the rights of the parties under their mortgage agreement, rather than a § 506(a) valuation, to determine § 1322(b)(2)'s applicability. In *Nobelman,* the Supreme Court specifically rejected the debtor's argument that a

§ 506(a) valuation should determine the extent a claim is protected under § 1322(b)(2). 508 U.S. at 328, 113 S.Ct. 2106. Instead, the Supreme Court examined the creditor's rights "reflected in the relevant mortgage instruments, which are enforceable under [state] law." *Id.* at 329, 113 S.Ct. 2106. In *Nobelman,* those rights included:

> ... the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.

*Id.* The Supreme Court held that it is these rights "bargained for by the mortgagor and mortgagee" that are protected from modification by § 1322(b)(2). *Id.* at 329–330, 113 S.Ct. 2106. Focusing on the bargain between the parties rather than a § 506(a) valuation, the Supreme Court concluded that even the under secured component of a homestead mortgage is protected from modification *Id.* at 332, 113 S.Ct. 2106.

■ Like other courts espousing this view, the court believes that the *Nobelman* decision "requires a functional reading of Section 1322(b) and the conclusion that its protection is afforded to all properly perfected holders of Homestead Mortgages." *Neverla,* 194 B.R. at 550. Logically extending the Supreme Court's focus on the bargain between the parties, the court holds that § 1322(b)(2) protects from modification any claim secured only by a lien on a debtor's principal residence enforceable under state law whether or not that claim would be partially secured or wholly unsecured under § 506(a). This reading of § 1322(b)(2) is not only consistent with *Nobelman,* but also promotes predictability and fairness in that the protection afforded a mortgagee's claim is not depen-

last payment on the mortgage is not due until after completion of the plan. [See HFN's

proof of claim filed March 19, 1999.] Thus, the amendment is inapplicable in this case.

dant on the fluctuating valuation of real estate or the existence of as little as $1.00 of equity to support the claim. *See Lewandowski*, 219 B.R. at 104 (observing that to allow modification of wholly unsecured claims would make the protection of a creditor's rights "hinge on the existence of merely one dollar of value supporting the lien.").

In this case, no party disputes that HFN has a properly perfected security interest, secured only by the Debtor's principal residence and enforceable under state law. Based on the court' s interpretation of § 1322(b)(2) and the Supreme Court's decision in *Nobelman*, the lien is protected from modification regardless of whether the lien would by wholly unsecured after a § 506(a) valuation. Accordingly, the Debtor's motion to avoid HFN's lien is **denied**.

**It is so ordered.**