**In re George E. LANE, Sherry A. Lane, Debtors.**

**No. 99–34479.**

United States Bankruptcy Court, E.D. Tennessee.

March 21, 2000.

Brenda G. Brooks, Knoxville, TN, for Debtors.

Winchester, Sellers, Foster & Steele, P.C., Anthony R. Steele, Knoxville, TN, for Western Interstate Bancorp as Successor Servicer to Firstplus Financial, Inc.

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

## MEMORANDUM ON OBJECTION TO CONFIRMATION

RICHARD S. STAIR, Jr., Chief Judge.

Before the court is the Objection to Confirmation and Rejection of Chapter 13 Plan (Objection) filed December 9, 1999, by Western Interstate Bancorp as Successor Servicer to Firstplus Financial, Inc., by Assignment from Freedom Mortgage Corporation (Firstplus). By its Objection, Firstplus, the holder of a claim secured by a second mortgage on the Debtors' residence, objects to confirmation of the Debtors' Chapter 13 Plan. The issue the court is called upon to resolve is whether the Debtors' treatment in their plan of Firstplus's claim violates the prohibition of 11 U.S.C.A. § 1322(b)(2) (West 1993) against modification of the rights of the holder of a claim secured only by the Debtors' principal residence. All facts are before the court on the Stipulation of Facts and Authenticity of Documents filed by the parties on February 23, 2000. The Debtors and Firstplus each filed a brief in support of their respective positions on February 23, 2000.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West 1993).

## I

The Debtors own as their principal residence a house at 837 Belle Aire Avenue, Knoxville, Tennessee, which is encumbered with two mortgages. The first mortgage, held by The CIT Group, had a balance of $40,223.79 when the Debtors filed their petition on November 3, 1999. The second mortgage, held by Firstplus, had a balance of $22,146.69. The value of the Debtors' residence is less than the amount of The CIT Group first mortgage.[1] In their Chapter 13 Plan, the Debtors propose to pay The CIT Group a monthly maintenance payment of $385.00 on its first mortgage claim, cure a $1,541.00 arrearage on The CIT Group's claim, and pay Firstplus a twenty to seventy percent dividend on its claim which they treat as wholly unsecured.

## II

Bankruptcy Code § 1322(b)(2) provides that a Chapter 13 plan may,

modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C.A. § 1322(b)(2). The phrase "other than a claim secured only by a security interest in real property that is the debtor's principal residence" is known as the home mortgage exception or anti-modification provision of § 1322(b)(2). See, e.g., In re Bivvins, 216 B.R. 622, 623 (Bankr.E.D.Tenn.1997) (referring to the home mortgage exception); In re Jones, 201 B.R. 371, 372 (Bankr.D.N.J.1996) (referring to the anti-modification provision).

In 1993, the Supreme Court decided Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), to resolve a split among the circuits on the appropriate relationship between § 1322(b)(2), which allows modification of a

---

**1.** The parties do not stipulate the value of the residence, but stipulate only that it "is less than the $40,223.79 balance set forth in the proof of claim filed by [The] CIT Group."

claim holder's rights, and 11 U.S.C.A. § 506(a) (West 1993), which requires bifurcation of a creditor's claim into its secured and unsecured components. The precise issue presented in *Nobelman* was whether "§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Nobelman*, 113 S.Ct. at 2108. In a unanimous opinion delivered by Justice Thomas, the Court concluded that § 1322(b)(2) "does" prohibit that reduction. *See id.*

After *Nobelman*, courts have split on whether § 1322(b)(2) prevents a debtor from relying on § 506(a) to reduce a wholly unsecured mortgage to a value of zero and treat the debtor's entire debt to the mortgagee as an unsecured claim. *See Bivvins*, 216 B.R. at 625 (collecting cases). The majority of courts which have considered the issue have allowed debtors to treat wholly unsecured mortgages as unsecured claims under § 1322(b)(2). *See id.* Those courts hold that under § 1322(b)(2) and *Nobelman*, the home mortgage exception applies only to creditors who have at least partially allowed secured claims. *See id.* A minority of courts applies the home mortgage exception to all creditors whose only security interest, with respect to a particular debt, is in the debtor's principal residence, regardless of the secured status of the claim under § 506(a), that is, regardless of whether the claim is partially secured and partially unsecured or wholly unsecured. *See In re Diggs*, 228 B.R. 611, 613–14 (Bankr.W.D.La.1999). Each side contends that its position is supported by *Nobelman* and a proper interpretation of § 1322(b)(2). *Compare McCarron v. FirstPlus Fin. (In re McCarron)*, 242 B.R. 479, 484–85 (Bankr.W.D.Mo.2000) (joining majority); *Bivvins*, 216 B.R. at 625 (same); *Associates Fin. Servs. Corp. v. Purdue (In re Purdue)*, 187 B.R. 188, 189–90 (S.D.Ohio 1995) (same); *Castellanos v. PNC Bank, Nat'l Assoc. (In re Castellanos)*, 178 B.R. 393, 395 (Bankr.M.D.Pa.1994) (same); *In re Plouffe*, 157 B.R. 198, 200 (Bankr. D.Conn.1993) (same), *with In re Perkins*, 237 B.R. 658, 661 (Bankr.S.D.Ohio 1999) (joining minority); *Jones*, 201 B.R. at 373–74 (same); *In re Barnes*, 199 B.R. 256, 257–58 (Bankr.W.D.N.Y.1996) (same); *In re Neverla*, 194 B.R. 547, 550–53 (Bankr. W.D.N.Y.1996) (same).

In *Nobelman*, the Court dealt with an undersecured mortgage, i.e., the claim was secured in part and unsecured in part. *See Nobelman*, 113 S.Ct. at 2108. The debtor argued "that the protection of § 1322(b)(2) applies only to the extent the mortgagee holds a 'secured claim' in the debtor's residence and that [the Court] must look first to § 506(a) to determine the value of the mortgagee's 'secured claim.' ... Section 1322(b)(2), they assert, allows unconditional modification of the bank's leftover 'unsecured claim.'" *Id.* at 2109. Courts on both sides of the issue commonly cite *Nobelman* for statements contained in the paragraph that followed, which reads:

This interpretation fails to take adequate account of § 1322(b)(2)'s focus on "rights." That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modification of the *"rights of holders"* of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home. Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest." But even if we accept petitioners' valuation, the bank is still the "holder" of a "secured claim," because petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim

that exceeds $23,500 is an "unsecured claim componen[t]" under § 506(a); however, that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.

*Id.* at 2109–10 (citation omitted).

Courts adhering to the majority view typically focus on the statements in that paragraph which relate to § 506(a) valuations, concluding that the Court's § 506(a) analysis was a necessary step in determining whether the creditor was the " 'holder' of a 'secured claim' " and therefore eligible for the home mortgage exception. *See, e.g., Purdue,* 187 B.R. at 189–90; *Castellanos,* 178 B.R. at 395; *Plouffe,* 157 B.R. at 199. In other words, under the majority view, the creditor must have an allowed secured claim under § 506(a), regardless of size, to trigger the home mortgage exception. *See Bivvins,* 216 B.R. at 625; *see also Lewandowski v. United States Dept. of Housing and Urban Dev. (In re Lewandowski),* 219 B.R. 99, 104 (Bankr.W.D.Pa. 1998) ("Under the majority view, whether a creditor's rights are modifiable could hinge on the existence of merely one dollar of value supporting the lien.") (citation omitted).

In the portion of *Nobelman* previously quoted, the Court began by stressing that § 1322(b)(2) focuses on the "rights" of creditors as holders of mortgages, rather than the status or modification of creditors' underlying claims. *See Nobelman,* 113 S.Ct. at 2109. The Court stated that, "[b]y virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on the petitioners' home." *Id.* at 2110. In making that statement, according to the minority view, the Court concluded that mortgage holders qualify for the home mortgage exception simply because they hold a mortgage. *See, e.g., Perkins,* 237 B.R. at 660–61; *Barnes,* 199 B.R. at 257.

The Court then went on to discuss § 506(a) in order to address the debtor's argument. While the majority cites that § 506(a) discussion as representing the basis for the Court's decision, courts taking the minority position hold that the Court's statements regarding § 506(a) are dicta and thus conclude:

> *Neverla* and *Jones* acknowledged, but rejected, the large number of cases supporting a stripoff. *Jones,* for example, found that reliance by some judges on the "still the holder" dicta from *Nobelman* was out of context with the rest of the *Nobelman* decision. Indeed, those dicta-based holdings allowing the "strip off" recreated the loophole *Nobelman* attempted to close and misread *Nobelman's* focus on the rights of secured creditors with security interests only in the debtor's principal residence.

*Barnes v. American Gen. Fin., Inc. (In re Barnes),* 207 B.R. 588, 592 (Bankr.N.D.Ill. 1997) (citations omitted).

The minority position is that, under *Nobelman,* the home mortgage exception is not triggered by the secured status of a creditor's claim but rather by the fact that a creditor holds a lien on a debtor's home. *See, e.g., Jones,* 201 B.R. at 374; *Neverla,* 194 B.R. at 550–51. The part of *Nobelman* which most clearly supports the decisions of the minority is where the Court discusses the "rights" held by a creditor with a mortgage in a debtor's home. *See Nobelman,* 113 S.Ct. at 2110. There the Court explained:

> The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law. They include the right ... to retain the lien until the debt is paid off, ... and the right to bring an action to recover any deficiency remaining after foreclosure.... These are the rights that were "bargained for by the mortgagor and the mortgagee" and are the rights protected from modification by § 1322(b)(2).

*Id.* (citations omitted) (quoting *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992)).

The strongest argument for the majority position is the grammatical structure of § 1322(b)(2). *See Bivvins,* 216 B.R. at 625; *Purdue,* 187 B.R. at 189; *Castellanos,* 178 B.R. at 395. The statute states that debtors may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims...." 11 U.S.C.A. § 1322(b)(2). The structure of the statute supports the majority view that the exception applies only to claims which are at least partially secured under § 506(a). However, the Supreme Court expressly rejected that interpretation of § 1322(b)(2) when it explained, "We acknowledge that this reading of the clause is quite sensible as a matter of grammar. But it is not compelled." *Nobelman,* 113 S.Ct. at 2111; *see also Neverla,* 194 B.R. at 550 (citing the Court's rejection of the "rule of the last antecedent" when interpreting § 1322(b)(2) in *Nobelman*). In doing so, the Court distinguished between the phrase " 'claim secured ... by,' " which is used in § 1322(b)(2)'s exception, from "the term of art 'secured claim.' " *Nobelman,* 113 S.Ct. at 2111. The latter, it explained, refers to the secured portion of an undersecured claim as determined under § 506(a). *See id.* It explained " 'claim secured by' " in terms of the broad definition of "claim" which includes " 'any right to payment, whether ... secure[d] or unsecured' or any 'right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether ... secure[d] or unsecured.' " *Id.* (quoting 11 U.S.C. § 101(5) (1988 ed. Sup. III)). The Court concluded:

> [T]o give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan ... would require a modification of the rights of the holder of the security interest. Sec-

tion 1322(b)(2) prohibits such a modification where ... the lender's claim is secured only by a lien on the debtor's principal residence.

*Id.* The Court's reasoning and conclusion supports the minority position that § 1322(b)(2)'s homestead mortgage exception applies to all holders of perfected mortgages. As stated by the court in *Neverla,* "[t]his is because such properly perfected mortgagees are literally 'secured only by a security interest in real property that is the debtor's principal residence,' irrespective of whether they are wholly, partially, or totally unsecured after the application of Section 506(a)." *Neverla,* 194 B.R. at 550 (footnote omitted).

### III

This court finds itself aligned with the minority because the Supreme Court in *Nobelman* focuses on the rights of the mortgagee rather than the § 506(a) valuation. The Court specifically rejected the debtor's argument that a valuation under § 506(a) should determine the extent to which a claim secured solely by the debtor's principal residence is protected under § 1322(b)(2). *Nobelman,* 113 S.Ct. at 2110 (The "rights" enjoyed by a mortgagee, "which are protected by § 1322(b)(2) are ['not necessarily'] limited by the valuation of its secured claim" under § 506(a).). Conversely, the Court examined the rights of the secured creditor "reflected in the relevant mortgage instruments, which are enforceable under [state] law." *Id.* Those rights included:

> the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.

*Id.* The Court held that it is these rights "bargained for by the mortgagor and mortgagee" that are protected from modification by § 1322(b)(2). *Id.* Focusing on the bargain between the debtor and the mortgagee rather than the § 506(a) valuation, the Court determined that even the unsecured component of a homestead mortgage is prohibited from modification. *See id.*

■ This court believes that *Nobelman* "requires a functional reading of Section 1322(b)[2] and the conclusion that its protection is afforded to all properly perfected holders of Homestead Mortgages." *Neverla,* 194 B.R. at 550. As observed by the court in *Perkins,*

> Logically extending the Supreme Court's focus on the bargain between the parties, ... § 1322(b)(2) protects from modification any claim secured only by a lien on a debtor's principal residence enforceable under state law whether or not that claim would be partially secured or wholly unsecured under § 506(a). This reading of § 1322(b)(2) is not only consistent with *Nobelman,* but also promotes predictability and fairness in that the protection afforded a mortgagee's claim is not dependant on the fluctuating valuation of real estate or the existence of as little as $1.00 of equity to support the claim.

*Perkins,* 237 B.R. at 660–61.

To this court, the Supreme Court resolved the present issue in the initial paragraph of its opinion in its phrasing of the question before it: "whether § 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Nobelman,* 113 S.Ct. at 2108. The Court "conclude[d] that it does" and affirmed the judgment of the Fifth Circuit. *Id.*

*Nobelman* is grounded upon the Supreme Court's determination that § 1322(b)(2) prohibits modification of the "rights of holders" of claims secured only by the debtor's homestead and not the modification of claims. *See id.* at 2109. The "rights" bargained for by the homestead mortgagee holding a claim wholly unsupported by value are the same rights that mortgagee would have if its claim were wholly or partially supported by the value of the debtor's residence. The homestead mortgagee's "rights" do not exist because of the value of its collateral. They have nothing to do with the value of the homestead, but exist because they were bargained for in "the relevant mortgage instruments." *Id.* at 2110. *Nobelman* therefore dictates that the holder of that claim is entitled to the anti-modification protection of § 1322(b)(2) without regard to the value of its mortgage. It is the "rights" afforded the mortgagee by the existence of its lien and not the value in the property supporting the lien that controls the outcome. *See American Gen. Fin., Inc. v. Dickerson,* 229 B.R. 539, 543 (M.D.Ga.1999).

In summary, the court adopts the view espoused by those courts that extend the anti-modification protection of § 1322(b)(2) to a claim secured only by a lien on a debtor's homestead regardless of whether that claim would be secured in part or wholly unsecured under § 506(a).

For the above reasons, Firstplus's Objection will be sustained and confirmation of the Debtors' Chapter 13 Plan will be denied. The court will allow the Debtors ten days to modify their plan to provide for payment of Firstplus's claim in the manner required under § 1322(b)(2) for payment of a claim secured solely by a security interest in the Debtors' residence. In the event the Debtors fail to timely file a modified plan, their Chapter 13 case will be dismissed without further notice or hearing.