FILED

MAY 18 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NV-14-1375-KuDJu |
| GWENDOLYNE F. PACK, | Bk. No.   13-19702 |
| Debtor. | |
| BELLA SERA HOMEOWNERS' ASSOCIATION, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| GWENDOLYNE F. PACK; BANK OF NEW YORK MELLON; OCWEN LOAN SERVICING, LLC, | |
| Appellees. | |

Argued and Submitted on March 19, 2015
at Las Vegas, Nevada

Filed – May 18, 2015

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Laurel E. Davis, Bankruptcy Judge, Presiding

Appearances:     Huong X. Lam of Alessi & Koenig, LLC argued for appellant Bella Sera Homeowners' Association; Steven L. Yarmy argued for appellee Gwendolyne F. Pack.[**]

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]Appellees Bank of New York Mellon and Ocwen Loan Servicing, LLC did not actively participate in this appeal.

Before: KURTZ, DUNN and JURY, Bankruptcy Judges.

## INTRODUCTION

Bella Sera Homeowners' Association appeals from the bankruptcy court's order granting debtor Gwendolyne Pack's motion to "strip off" Bella Sera's wholly unsecured lien. Bella Sera also appeals from the court's order confirming Pack's chapter 11[1] plan.

Both the strip off order and the confirmation order were founded on an incorrect interpretation of Nevada law regarding the priority of liens arising from homeowners association assessments and charges under Nevada Revised Statutes ("NRS") § 116.3116. After the bankruptcy court entered the orders on appeal, the Nevada Supreme Court issued a decision interpreting the priority of homeowners association liens under NRS § 116.3116 that is inconsistent with the bankruptcy court's interpretation. See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A., 334 P.3d 408 (2014). We must follow the Nevada Supreme Court's interpretation of Nevada law. Therefore, we VACATE the bankruptcy court's strip off and confirmation orders, and we REMAND so that the bankruptcy court can consider Bella Sera's lien rights in light of SFR Invs. Pool 1.

## FACTS

Pack, an elderly widow, lives on retirement income and

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

income from the rental of two parcels of real property located on Notte Calma Street in Las Vegas, Nevada. At the time of her bankruptcy filing, both properties were significantly overencumbered. In her chapter 11 plan, Pack hoped to partially relieve herself from the economic burdens associated with these overencumbered properties, while at the same time using the rental income from the properties to fund her plan.

To accomplish her goals, Pack's plan as amended proposed to modify the rights of her creditors whose claims under applicable nonbankruptcy law were secured by liens against the Notte Calma properties. In relevant part, with respect to the rental property located at 11330 Notte Calma Street, the amended plan proposed to modify the rights of the three lienholders of record. The identity of each of these lienholders, and the amount and type of lien each of them held were described in Pack's strip off motion as follows:

> a. Wells Fargo Bank, NA as Trustee for Securitized Asset Backed Receivables LLC, . . . MPTC Series 2004-OP2 . . . (First Deed of Trust) in an estimated amount of $437,285.00. . . .
>
> b. US Bank, NA as Trustee for Structured Asset Securities Corp, MPTC Series 2004-S4 . . . (Second Deed of Trust) in an estimated amount of $122,436.59. . . .
>
> c. Bella Sera Homeowners Association, (HOA Lien) in an estimated amount of $12,971.34.

Motion to Value Collateral, "Strip Off" and Modify Rights of Wells Fargo Bank, etc., et. al. (May 28, 2014) at p. 2.

According to Pack, Wells Fargo's security interest was the senior lien on the property and was the only lien on the property that was not wholly unsecured, given the value of the real property collateral. Consequently, Pack reasoned that both

3

U.S. Bank's second deed of trust and Bella Sera's homeowners association lien, as wholly unsecured liens, could be stripped off and avoided in their entirety in accordance with §§ 506 and 1123(b)(5).

In asserting that Bella Sera's lien was junior to Wells Fargo's first deed of trust, Pack relied on the mortgage savings clause in the Amended Declaration of Covenants, Conditions and Restrictions ("CC&Rs") recorded against the property and other properties within the common interest planned community of which Pack's property is a part. The mortgage savings clause indicated that all homeowners association assessment liens would be subordinate to any first deed of trust or mortgage held against any lot or unit within the community.

Pack also relied on NRS § 116.3116(2), which spells out the priority of homeowners association liens. Because of the pivotal role played by NRS § 116.3116(2) in this appeal, we quote that provision in its entirety, as follows:

2. **A lien under this section is prior to all other liens and encumbrances on a unit except:**

(a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;

(b) **A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent** or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

**The lien is also prior to all security interests described in paragraph (b) to the extent of any charges**

4

**incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses** based on the periodic budget adopted by the association pursuant to NRS 116.3115 **which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien**, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. If federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien, the period during which the lien is prior to all security interests described in paragraph (b) must be determined in accordance with those federal regulations, except that notwithstanding the provisions of the federal regulations, the period of priority for the lien must not be less than the 6 months immediately preceding institution of an action to enforce the lien. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association.

NRS § 116.3116(2) (West) (emphasis added). Under Pack's reading of the statute, the last paragraph of NRS § 116.3116(2) did not grant to Bella Sera a superior lien but rather merely afforded Bella Sera a right to payment equal to nine months of assessments in the event that Wells Fargo as the first trust deed holder completed foreclosure proceedings against the property.

Bella Sera filed an opposition to Pack's strip off motion. In its opposition, Bella Sera construed NRS § 116.3116(2) differently than Pack. Bella Sera asserted that, under the statute, the entire amount that Pack owed it (roughly $13,000, plus additional collection fees and costs) was secured by a statutory lien of equal priority to Wells Fargo's first deed of trust. As Bella Sera put it, the priority between itself and Wells Fargo only could be determined by a race to the auction block: whoever foreclosed first would have priority, except that even if Wells Fargo successfully foreclosed first, Bella Sera

5

still would be entitled to "nine months worth of assessments before anyone else gets a cut of the [foreclosure sale] proceeds." Objection to Strip Off Motion (May 30, 2014) at 3:26-27.

Bella Sera further argued that an adversary proceeding was necessary under Rule 7001(2) if Pack sought to avoid Bella Sera's lien. Finally, Bella Sera pointed out that Pack's reliance on the mortgage savings clause in the CC&Rs was misplaced because, to the extent the mortgage savings clause was inconsistent with NRS § 116.3116(2), the statute controlled and prohibited the parties from deviating from the lien rights and priorities provided for in the statute.[2]

After multiple hearings and supplemental briefing, the bankruptcy court granted Pack's strip off motion, in the process holding that both the second deed of trust held by U.S. Bank[3] and Bella Sera's homeowners association lien were junior to Wells Fargo's first deed of trust. Based on the agreed-upon valuation of the property at $419,500, and the undisputed amount owed to Wells Fargo – in excess of $437,000 – the bankruptcy court further held that U.S. Bank's and Bella Sera's liens were wholly unsecured and thus the liens could be stripped off and avoided as

---

[2]Bella Sera cited NRS § 116.1206 as supporting this proposition. In contrast, in SFR Invs. Pool 1 v. U.S. Bank, 334 P.3d at 419, the Nevada Supreme Court relied on NRS § 116.1104 in the process of holding that a similar mortgage savings clause was ineffective to the extent that clause conflicted with NRS § 116.3116(2).

[3]U.S. Bank did not actively oppose Pack's proposed treatment of its second deed of trust.

6

part of Pack's chapter 11 plan, thereby relegating both U.S. Bank and Bella Sera to the status of unsecured creditors for plan distribution purposes.

In so holding, the bankruptcy court determined that NRS § 116.3116(2) does not grant to homeowners associations a superior lien for nine months' worth of assessments or for any other amount. Instead, the bankruptcy court construed § 116.3116(2) as merely granting to homeowners associations a limited right to payment – of up to nine months' worth of assessments – in the event the holder of the first trust deed forecloses.

In light of these holdings, the bankruptcy court entered orders granting Pack's strip off motion and confirming Pack's amended chapter 11 plan. Bella Sera timely filed a notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K) and (L). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in determining under Nevada law that Bella Sera's lien was junior to Wells Fargo's deed of trust lien?

**STANDARDS OF REVIEW**

The bankruptcy court's decision hinged on its interpretation of Nevada law. We review its interpretation of state law de novo. Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 426–27 (9th Cir. 2011).

7

**DISCUSSION**

In the Ninth Circuit, debtors may through a chapter 11 or a chapter 13 plan strip off wholly unsecured liens. <u>Zimmer v. PSB Lending Corp. (In re Zimmer)</u>, 313 F.3d 1220, 1223-27 (9th Cir. 2002); <u>BAC Home Loans Servicing, LP v. Abdelgadir (In re Abdelgadir)</u>, 455 B.R. 896, 901-02 (9th Cir. BAP 2011). As we explained in <u>In re Abdelgadir</u>, before confirming a chapter 11 plan proposing to avoid a creditor's lien pursuant to §§ 506 and 1123(b)(5), the bankruptcy court must determine, among other things, "whether the value of the creditor's claim makes it secured or wholly unsecured." <u>Id.</u> at 902. Before it can make that determination, the bankruptcy court must first know the relative priority of the lien to be avoided in relation to other liens held against the same property. If there is another lien senior to the lien to be avoided and if the senior lien is partially undersecured because the property is of insufficient value to fully satisfy the senior lien, then the lien to be avoided – as the junior lien — necessarily is wholly unsecured and may be avoided through the plan process. <u>See</u> <u>In re Zimmer</u>, 313 F.3d at 1223-27.[4]

Under certain circumstances, the Code restricts the extent to which a chapter 11 debtor can modify lien rights under §§ 506 and 1123(b)(5). For example, partially undersecured creditors

---

[4]While <u>In re Zimmer</u> involved a chapter 13 plan instead of a chapter 11 plan, we held in <u>In re Abdelgadir</u>, 455 B.R. at 901 n.7, that §§ 1123(b)(5) and 1322(b)(2) are identical, that both provisions permit debtors to modify the lien rights of secured creditors and hence that case law examining § 1322(b)(2) is persuasive in interpreting § 1123(b)(5).

8

can make an election under § 1111(b) to force the debtor to treat the value of the undersecured creditor's lien as equal to the total amount of its claim for plan confirmation purposes. See First Fed. Bank of Cal. v. Weinstein (In re Weinstein), 227 B.R. 284, 294 (9th Cir. BAP 1998). But § 1111(b) affords no relief to wholly unsecured creditors because the statute bars relief to creditors holding liens of "inconsequential value." In re 500 Fifth Ave. Assocs., 148 B.R. 1010, 1016 (Bankr. S.D.N.Y. 1993) aff'd, 1993 WL 316183 (S.D.N.Y. May 21, 1993); see also Tuma v. Firstmark Leasing Corp. (In re Tuma), 916 F.2d 488, 491 (9th Cir. 1990).

Nor does § 1111(b) improve the rights of wholly secured creditors. If the value of the real property collateral exceeds the amount of the creditor's lien, then the creditor's entire claim is secured and is entitled to the type of plan treatment reserved for secured creditors. See §§ 506(a), 1123(b)(5), 1129(a)(7) and 1129(b)(2)(A).[5]

In short, Bella Sera's lien rights in Pack's bankruptcy case hinged on whether Bella Sera's homeowners association lien was junior or senior in priority to Wells Fargo's first deed of

[5]Some creditors alternately might be able to prevent avoidance of their liens by invoking the exception to lien right modification set forth in § 1123(b)(5). This exception prohibits avoidance of "liens in real property that is the debtor's principal residence." However, this exception does not apply to liens in property that is not used by the debtor as his or her residence on the date of his or her bankruptcy filing. In re Abdelgadir, 455 B.R. at 903. Here, it is undisputed that Pack was not using 11330 Notte Calma Street as her principal residence on the date of her bankruptcy filing. Thus, the § 1123(b)(5) modification exception does not support Bella Sera's contention that its lien should not have been stripped off.

9

trust. If, as the bankruptcy court determined, Bella Sera's lien was junior to Wells Fargo's deed of trust, then Bella Sera's lien was wholly unsecured, and the bankruptcy court correctly confirmed Pack's plan proposing to strip off Bella Sera's lien. On the other hand if, as Bella Sera contends, Bella Sera's lien was senior to Wells Fargo's deed of trust, then Bella Sera's lien was wholly secured, and the court erred in stripping off Bella Sera's lien and in confirming Pack's plan, which treated Bella Sera as an unsecured creditor for plan distribution purposes.

In holding that Bella Sera's lien was junior to Wells Fargo's deed of trust, the bankruptcy court relied on two bankruptcy court decisions from Florida, which has a homeowners association lien statute the bankruptcy court considered similar to Nevada's. See In re Plummer, 484 B.R. 882, 887 (Bankr. M.D. Fla. 2013); In re Gonzales, 2010 WL 1571172, at *2-*3 (Bankr. S.D. Fla. Apr. 20, 2010).[6]

Relying on In re Plummer and In re Gonzales, the bankruptcy court here held that homeowners associations do not hold any lien superior in priority to the first deed of trust unless they record a notice of delinquent assessments before the first trust

---

[6]The bankruptcy court indicated that both Florida and Nevada had adopted their homeowners association assessment statutes from the same source: the Uniform Common Interest Ownership Act of 1982. However, the adoption tables accompanying this version of the Uniform Act do not indicate that Florida ever adopted it. Nor does the Florida statute at issue in In re Plummer and In re Gonzales – Florida Statute § 781.116 – strike us as being that similar to the statute at issue in this appeal – NRS § 116.3116(2).

10

deed is recorded.  In further reliance on In re Plummer and In re Gonzales, the bankruptcy court additionally held that the last paragraph of NRS § 116.3116(2) did not grant a lien to Bella Sera superior to Wells Fargo's.  Rather, the bankruptcy court interpreted the last paragraph of NRS § 116.3116(2) as granting to Bella Sera, in the event of foreclosure by the first trust deed holder, a mere right to payment equal to nine months worth of homeowners association dues.

As it turns out, the bankruptcy court's reliance on In re Plummer and In re Gonzales was misplaced.  Yet this only became clear when the Nevada Supreme Court decided SFR Invs. Pool 1.  That decision involved a priority dispute between a homeowners association – the Southern Highlands Community Association – and the holder of a first deed of trust – U.S. Bank.  To enforce its homeowners association lien, Southern Highlands commenced nonjudicial foreclosure proceedings and completed those proceedings before U.S. Bank could complete its own competing nonjudicial foreclosure sale.  SFR Invs. Pool 1, 334 P.3d at 409-10.  The successful bidder at Southern Highlands' sale – SFR Investments Pool 1 – subsequently filed an action against U.S. Bank seeking to enjoin the bank from completing its nonjudicial foreclosure sale.  Id. at 410.

In that action, SFR asserted that Southern Highlands' lien was superior to U.S. Bank's first deed of trust, so Southern Highlands' nonjudicial foreclosure sale extinguished U.S. Bank's lien.  The state court ultimately denied SFR any injunctive relief and dismissed SFR's action, in the process holding that even if Southern Highlands' lien was superior to U.S. Bank's

11

first deed of trust, Southern Highlands should have foreclosed by way of judicial foreclosure proceedings and that Southern Highlands' nonjudicial foreclosure sale consequently did not extinguish U.S. Bank's first deed of trust.  Id.

On appeal, the Nevada Supreme Court reversed.  In so ruling, the SFR Invs. Pool 1 court in relevant part held that NRS 116.3116(2) effectively split homeowners association liens into two pieces, with each piece having a different priority in relation to a first deed of trust:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. **The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.**

Id. at 411 (emphasis added).

Based on its interpretation of NRS 116.3116(2), the SFR Invs. Pool 1 court rejected U.S. Bank's argument that the statute granted Southern Highlands a mere "payment priority" which arose only if U.S. Bank completed its foreclosure proceedings.  Id. at 412.  After painstaking consideration of the plain language of the statute, the existing case law, the official comments to the Uniform Common Interest Ownership Act of 1982 (from which Nevada adopted its homeowners association statutes) and several other secondary sources, the SFR Invs. Pool 1 court ultimately concluded that the superpriority piece of Southern Highlands' lien conferred upon Southern Highlands a "true priority" lien superior to U.S. Bank's first deed of trust. Id. at 413.

Here, the bankruptcy court's interpretation of NRS 116.3116(2)'s lien priority provisions is fatally inconsistent with SFR Invs. Pool 1's interpretation of the same provisions. Applying, as we must, SFR Invs. Pool 1's interpretation of the statute, we hold that the bankruptcy court should have acknowledged that Bella Sera had a (superpriority) wholly secured lien to the extent that the lien secured up to "nine months of unpaid HOA dues," as well as any "maintenance or nuisance-abatement charges" that Pack owed Bella Sera. See id. at 412, 416. In addition, the bankruptcy court should have acknowledged that Bella Sera had a separate (subpriority) wholly unsecured lien for the remainder of the charges, fees and assessments that Pack owed Bella Sera. See id. at 411-13.

Accordingly, we must vacate the bankruptcy court's strip off order and confirmation order. On remand, in accordance with SFR Invs. Pool 1, the bankruptcy court will need to determine how much (if any) of Bella Sera's lien qualifies for superpriority (wholly secured) status and how much qualifies for subpriority (wholly unsecured) status. The bankruptcy court also will need to determine whether Pack's alternate proposed treatment of Bella Sera's lien provided for on page 21 of Pack's plan satisfies all plan confirmation requirements applicable to the wholly secured portion of Bella Sera's lien.

Bella Sera makes a number of arguments in its appeal brief in an attempt to persuade us that the entire amount it is owed is secured by a lien superior to Wells Fargo's first deed of trust. For instance, Bella Sera attempts to argue that NRS 116.31164 – which governs the distribution of foreclosure sale proceeds –

13

somehow supports the notion that the entire amount it is owed is secured by a superpriority lien. Bella Sera further posits that the priority dispute between itself and Wells Fargo only can be resolved by a race to the auction block. Neither of these arguments can be reconciled with SFR Invs. Pool 1, so we reject them.

Bella Sera also argues that there is something so exceptional about homeowners association liens that its lien rights should not be subject to modification under § 1123(b)(5). This argument cannot be reconciled with the plain language of § 1123(b)(5). Congress obviously knew how to create exceptions to the debtor's entitlement to modify lien rights as evidenced by the exception in the statute for security interests in residential real property, but Congress chose not to enact any exception for homeowners association liens. On that basis, we reject Bella Sera's anti-modification argument.

As for Pack, she makes a number of arguments attempting to support the bankruptcy court's ruling that the entirety of Bella Sera's lien is junior to Wells Fargo's deed of trust and hence wholly unsecured. For example, she suggests that it would be a severe hardship to holders of first trust deeds if any part of a homeowners association lien was granted superpriority. But SFR Invs. Pool 1 addressed this policy concern and found it unpersuasive. See id. at 414.

Pack also points out that the CCRs purported to give the holders of first deeds of trust priority over homeowners association liens in virtually all instances. As we explained above, to the extent the mortgage savings clause in the CCRs is

14

inconsistent with NRS § 116.3116(2), the mortgage savings clause is invalid. See footnote 2, supra. Simply put, none of Pack's arguments can be reconciled with SFR Invs. Pool 1, so we reject them.

Finally, at the end of her appeal brief, Pack attempts to make a conflict preemption argument in which she suggests that NRS § 116.3116(2) somehow is inconsistent with the Bankruptcy Code. It suffices for us to say that we perceive no conflict between the Bankruptcy Code and NRS § 116.3116(2).

The only other issue we must address is procedural. The controlling issue in the dispute between Bella Sera and Pack was the relative priority of Bella Sera's lien and Wells Fargo's first deed of trust. Whereas the bankruptcy court resolved this priority dispute as part of its disposition of Pack's strip off motion and Pack's confirmation proceedings, Rule 7001(2) dictates that priority disputes should be resolved by adversary proceeding. Bella Sera raised the issue of whether an adversary proceeding was necessary in its initial objection to Pack's strip off motion. However, Bella Sera later abandoned this issue by not addressing it in its appeal brief. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010) (stating that appellate courts generally may treat as forfeited issues "not specifically and distinctly argued in appellant's opening brief."). Even so, on remand, the bankruptcy court should ascertain to what extent a priority dispute still exists between the parties and, to the extent one still exists, should determine whether it should be resolved by adversary proceeding.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's strip off order and its confirmation order, and we REMAND for further proceedings consistent with this decision.